COLEMAN CLINIC, LTD., and
Coleman Clinic, Ltd. Employee
Pension Plan, Plaintiffs,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.,
Defendants.

Jack L. GIBBS, M.D., Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.,
Defendants.

Nos. 86–1290, 88–1029.

United States District Court,
C.D. Illinois,
Peoria Division.

Oct. 28, 1988.

Dean B. Rhoads, Mike Lied, Sutkowski & Washkuhn, Peoria, Ill., for plaintiffs.

Jordan A. Fifield, Kevin Miller, Goldsworthy, Fifield & Hasselberg, Peoria, Ill., for defendant, Gary Sigler.

Charles G. Roth, Lori Judd, Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for defendant, Charles Longanecker, II.

Jeff Rock of Harvey & Stuckel, Peoria, Ill., for C. Hodgson and Corp. Ben. Planners, Inc.

Waldemar J. Pflepsen Jr., Tew, Jorden & Schulte, Washington, D.C., for Massachusetts Mut. and Gary Ziegler (Sizler).

David Mueller, Tim Cassidy, Cassidy & Mueller, Peoria, Ill., James Jordan, Waldemar Pflepsen, Jr., Tew Jorden & Schulte, Washington, D.C., for Massachusetts Mut. Ins. Co.

Robert L. McMahan, Macomb, Ill., pro se.

Dean B. Rhoads, Michael R. Lied, Sutkowski & Washkuhn Assoc., Peoria, Ill., for counterclaimants Gibbs, Sutkowski & Sutkowski & Washkuhn Assoc.

Burrel Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for Raoul Reinertsen.

## ORDER

MIHM, District Judge.

This case is before the Court for resolution of Defendant Charles Longanecker II's Motions for Partial Summary Judgment, Defendant Massachusetts Mutual Life Insurance Company's Motion for Judgment on the Pleadings, and Third Party Defendants' Motion for Summary Judgment on the Third Party Complaint.

As described below, the Court GRANTS Defendant Longanecker's Motion for Partial Summary Judgment, GRANTS Defendant Massachusetts Mutual's Motion for Judgment on the Pleadings insofar as it relates to Plaintiff Coleman Clinic and DE-NIES the Motion insofar as it relates to Plaintiffs Coleman Clinic, Ltd. Employee Pension Plan and Jack L. Gibbs, M.D. Massachusetts Mutual's Motion is also DENIED with respect to Counts II and III. Finally, the Court *sua sponte* DISMISSES the Third Party Complaint for lack of jurisdiction, so that Third Party Defendants' Motion for Summary Judgment is MOOT.

## FACTS

Plaintiff, Coleman Clinic, Ltd. (hereinafter referred to as "Coleman") is a medical clinic with its principal offices located in Canton, Illinois; Plaintiff Coleman Clinic, Ltd. Employee Pension Plan (hereinafter referred to as "the plan") is a defined benefit pension plan maintained by Coleman for the benefit of its employees, and Plaintiff Jack L. Gibbs, M.D. was a trustee of the plan. The purpose of the plan is to provide retirement and life insurance benefits for Coleman employees, principally through yearly contributions by Coleman to the plan. Count I of Plaintiffs' Complaint is brought pursuant to the Employee Retirement Income Secuity Act of 1974 (ERISA), § 502(a)(2), 29 U.S.C. § 1132(a)(2) and under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Counts II and III of Plaintiffs' Complaint are pendent state law claims.

In 1979, Coleman was approached by Defendant Massachusetts Mutual Life Insurance Company (hereinafter referred to as "Mass Mutual") regarding the possibility of Coleman placing its existing pension plan with a pension plan sponsored, prepared, and serviced by Mass Mutual. Upon review of the information provided to it by Mass Mutual, Coleman agreed to revise its existing pension plan into a Mass Mutual plan. The new plan was designated the Coleman Clinic, Ltd. Employee Pension Plan.

Under the pension agreement established through Mass Mutual's dealings with Coleman, the plan was to purchase insurance contracts for Mass Mutual on behalf of certain plan participants. From time to time, upon Mass Mutual's recommendation, the plan purchased individual cash value

life insurance policies that insured the lives of some of the plan participants. The plan's purchase of such insurance resulted in monetary benefits to Mass Mutual and its agents in the form of premiums and commissions. In addition, Mass Mutual and its agents received fees for actuarial and non-actuarial services associated with the plan.

On August 15, 1984, Coleman's board of directors voted to terminate the plan. It was Coleman's goal to terminate the plan before the plan was required to accrue benefits for the July 1, 1984 to June 30, 1985 plan year (hereinafter referred to as "1985 plan year"). In order to do so, that termination had to occur before participants in the plan performed 1,000 hours of work for Coleman during that period. Shortly after the vote, Coleman advised Judith Dudiak, an agent of Mass Mutual, that the plan had to be terminated. Coleman requested that a Mass Mutual agent provide it with the necessary information and paperwork to terminate the plan. However, Coleman was not provided with the information and paperwork to terminate the plan until April of 1985. By that time, plan participants were entitled to be credited with 1,000 hours of service, so that the plan was required to accrue benefits for the 1985 plan year.

According to Plaintiffs, had the plan been terminated effective June 30, 1984, the costs of all benefits under the plan would have totaled approximately $462,562, but because Defendants did not provide the necessary paperwork to terminate the plan until April 1985, the plan was terminated effective April 25, 1985, so that the cost of all benefits under the plan totaled approximately $555,876. It is also alleged by Plaintiffs that, on March 5, 1985, the plan surrendered the individual cash value life insurance policies that it had purchased to Mass Mutual in exchange for the payment of $118,760.46 by Mass Mutual to the plan. Plaintiffs claim that the amounts paid to the plan by Mass Mutual upon surrender of the policies were substantially less than the amounts paid by the plan as premiums on the policies, plus interest, less the reason-

able value of life insurance protection provided by the policies.

## MASS MUTUAL'S MOTION FOR JUDGMENT ON THE PLEADINGS

In its Motion for Judgment on the Pleadings, Defendant Mass Mutual argues that Count I should be dismissed in its entirety for the reasons that: (1) the employer, Coleman, has no standing to sue under ERISA; (2) the plan has no standing to sue under ERISA; and (3) neither Plaintiff Gibbs nor the plan have alleged injury in fact under ERISA. Furthermore, because dismissal of Count I deprives this Court of federal subject matter jurisdiction, Mass Mutual argues that the common law claims in Counts II and III should be dismissed as well.

## COLEMAN'S STANDING

According to Mass Mutual, even assuming that Coleman retained the right to amend certain aspects of the plan, to appoint trustees and the plan administrator, and to terminate the plan, Coleman nevertheless lacks standing to sue in the instant case. The basis of Mass Mutual's argument is that there must be a nexus between an employer's fiduciary responsibility and the particular cause of action in order to grant standing to an employer to sue in an ERISA case. In other words, the approach is a functional one: by the express terms of 29 U.S.C. § 1002(21)(A), a person is a fiduciary only to the extent that he or she is exercising discretion in the management or administration of a plan or its assets, or in the rendering of investment advice. An employer's status as a fiduciary does not confer standing generally, but only to the extent that the employer is acting in a particular fiduciary capacity. *Cf. Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131 (7th Cir.1983) ("Congress took a functional approach to defining who was to be treated as a fiduciary").

Mass Mutual argues that, in this case, Coleman is not suing in connection with any activity as to which it allegedly exercised fiduciary discretion. Plaintiffs' allegation that the plan paid too much for the

insurance policies purchased from Mass Mutual has no relationship to Coleman's alleged fiduciary powers to appoint trustees or a plan administrator, or to amend the plan. Coleman makes no attempt to even assert that it is suing in connection with any exercise of its alleged fiduciary administrative discretion, but is suing as an employer. It is well-established that employers, as employers, do not have standing to sue under § 502(a)(2) of ERISA. *Tuvia Convalescent Center, Inc. v. Nat'l Union of Hosp. and Health Care Employees*, 717 F.2d 726 (2nd Cir.1983).

In their response, Plaintiffs state that a number of cases establish that an employer, to the extent that it is a fiduciary, has standing to bring an ERISA action, and that Coleman has alleged in its Amended Complaint that it is a fiduciary. *See, Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir.1986); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101 (6th Cir.1983); *United States Steel v. Commonwealth of Pennsylvania Human Relations Commission*, 669 F.2d 124 (3rd Cir. 1982). In *Miniat*, the Seventh Circuit stated that, "At least for some purposes, [the employers] may be fiduciaries and hence have standing to bring [an ERISA] suit." *Miniat*, 805 F.2d at 736. Thus, Plaintiffs argue that, where the employer is the plaintiff, the Seventh Circuit does not appear to impose any requirement that the employer be a fiduciary for all purposes or a fiduciary with regard to the specific acts or omissions of the defendants upon which the suit is brought.

Plaintiffs note that certain of the plan documents at issue specifically designate Coleman as the plan administrator, in addition to providing Coleman with a variety of discretionary rights and duties, including day-to-day administration of the plan. Plaintiffs state that, even as a defendant, a named fiduciary "holds fiduciary status for all purposes." *Avakelian v. Nat'l Western Life Ins. Co.*, 680 F.Supp. 400 (D.D.C.1987), *citing, Birmingham v. Sogen-Swiss Int'l Corp. Retirement Plan*, 718 F.2d 515, 521–22 (2d Cir.1983). Plaintiffs also claim that, in *Mutual Life Ins. Co. of New York v. Yampol*, 840 F.2d 421 (7th Cir.1988), the Seventh Circuit noted its "consistently broad reading of" the definition of "fiduciary" and further stated that "it is clear that under the ERISA scheme, any person who falls within the scope of this section 1002(21)(A) definition is a fiduciary and therefore may bring a cause of action pursuant to 29 U.S.C. § 1132(a)(2)." 840 F.2d at 426 n. 6. According to Plaintiffs, Mass Mutual's argument with respect to the nexus requirement may have some merit to the extent that the fiduciary is an ERISA defendant, but that the underlying policies do not apply when the fiduciary is the plaintiff and the issue is the fiduciary's standing to sue.

Although Mass Mutual concedes that Coleman was the designated plan administrator, Mass Mutual claims that an amendment to the plan delegated administrative duties to the plan's pension committee so that the committee, and not Coleman, was the fiduciary with respect to the plan's administration and management, thus relieving Coleman from the liability and responsibility for administering the plan pursuant to 29 U.S.C. § 1105(c). The Court finds merit in this argument[1], and rules that, because of the legitimate delegation of administrative duties that occurred in this case, Coleman cannot rely on its status as a plan administrator in claiming that it has standing to sue.

The Court also rejects, for a second time, Plaintiffs' argument with respect to the nexus requirement. It was on the basis of a lack of a nexus between Coleman's administrative responsibility and the injuries alleged in the Complaint that this

---

1. Coleman claims that a valid delegation did not occur because the delegation to the pension committee was not completed in strict conformance with the delegation provision contained in the plan instrument. Specifically, Coleman contends that the delegation was not accepted by the pension committee in writing as required by § 2.4 of the plan document. However, the Joinder Agreement that designated the pension committee as plan trustee was signed by Harlan Crouch of the pension committee on behalf of that body. Therefore, contrary to Coleman's assertion, the delegation was valid.

Court granted Mass Mutual's Motion for Judgment on the Pleadings on June 21, 1988. At that time, the Court found that Seventh Circuit precedent required that Coleman allege that the claimed ERISA violations related to its responsibilities with respect to the plan in order for Coleman to sue as a fiduciary. Coleman has failed to allege a nexus between its duties with respect to the plan and the plan termination, contrary to this Court's earlier directive. Mass Mutual's Motion for Judgment on the Pleadings is granted as to Coleman Clinic.

## THE PLAN'S STANDING TO SUE

Mass Mutual argues that the overwhelming weight of authority holds that a plan lacks standing to maintain an action under 29 U.S.C. § 1132(a), which expressly limits those parties who are empowered to bring a civil action under ERISA. Defendants claim that, while Plaintiffs seeks to rely on *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co.*, 698 F.2d 320 (7th Cir.1983), in *Mutual Life Ins. Co. of New York v. Yampol*, the Seventh Circuit characterized Peoria Union's position that, "ERISA confers on pension plans standing to sue for breach of fiduciary obligations under ERISA," 698 F.2d at 326, as "dicta without analysis." *Yampol*, 840 F.2d at 426 n. 2. Accordingly, Mass Mutual claims that the plan lacks standing to sue as a matter of law.

■ This is a very close question, but the Court is inclined to deny Defendant's Motion on this ground. Although the *Yampol* court did not regard *Peoria Union* as controlling on the question of whether or not a plan has standing to sue under ERISA, and treated this question as an open one, *Peoria Union* does remain the only case in which the Seventh Circuit has indicated how it would rule were it to address the question directly. In addition, the *Yampol* court's statement in this respect was itself dicta, since the Court of Appeals held that it need not decide whether a plan has standing to sue to bring a claim for fiduciary violations. Yet, the *Yampol* court, despite its awareness of

*Peoria Union's* existence, declined to overrule that case.

A finding that a plan has standing to sue is also consistent with the language of ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). That subsection provides as follows:

> An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. In a case where a plan has not designated in the summary plan description of the plan an individual as agent for the service of legal process, service upon the Secretary shall constitute such service. The Secretary, not later than 15 days after receipt of such service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.

*Id.* The *Peoria Union* court cited this section in support of its statement that an employee pension plan has standing to sue for breaches of fiduciary duties under ERISA. *Peoria Union*, 698 F.2d at 326. As this Court reads the statute, the *Peoria Union* court's reading of this provision is accurate. In fact, it is hard to imagine what the purpose of 29 U.S.C. § 1132(d)(1) is, if not to confer standing upon plans, and to render them subject to suit for violations of ERISA.

Granted, some confusion is created by the fact that § 502(a) of ERISA, 29 U.S.C. § 1132(a), which is entitled, "Persons Empowered to Bring a Civil Action," enumerates the persons who may bring actions under ERISA and the type of relief that they might seek, but does not mention employee benefit plans as one of those "persons." Yet, principles of statutory construction dictate that this Court read the statute as a whole in determining its meaning. In considering the question of whether or not the plan has standing to sue for breaches of fiduciary duty under ERISA, the Court is obliged to read 29 U.S.C. § 1132(d)(1) along with 29 U.S.C. § 1132(a). Applying this rule, the Court believes that

the most reasonable construction is to find that a plan does indeed have standing to sue in a case such as this. While 29 U.S.C. § 1132(a) designates which *persons* have standing to sue, an employee benefit plan is not a "person." Thus, Congress devoted a different subsection, 29 U.S.C. § 1132(d), to the question of a plan's standing as an *entity*. Indeed, throughout § 1132(d), the emphasis is upon the "status of [an] Employee Benefit Plan as an Entity"—the title of that subsection. Therefore, as to this ground of Defendant's Motion for Judgment on the Pleadings, the Motion is denied.

GIBBS' AND THE PLAN'S INJURY IN FACT

Mass Mutual contends that, with respect to Defendant's alleged failure to terminate the plan in a timely manner, Plaintiffs have made no allegation in their Amended Complaint that the plan or trustee Gibbs suffered any injury due to Defendant's alleged conduct. *See*, Amended Complaint, ¶ 26(b). Defendant stresses that the only "injury" allegedly suffered by the plan and trustee Gibbs is that, had Plaintiffs paid less for the insurance purchased from Mass Mutual, the plan and its participants "could have realized additional benefits." *Id.*

Even if the above allegation, standing alone, would be sufficient to state an injury in fact to the plan and to Gibbs, Mass Mutual argues that ¶ 26(b) of the Amended Complaint is contradicted by ¶ 26(a), which asserts that Coleman had to pay out monies it would otherwise have not have paid out. Thus, according to Mass Mutual, the allegation that the plan lost additional benefits is pure conjecture, absent any assertion that Coleman would in fact have provided such benefits. Mass Mutual cites the case of *Foster v. Center Twp. of LaPorte County*, 798 F.2d 237, 242 (7th Cir.1986), for the proposition that alleged harm that is *conjectural* rather than actual is "palpably inadequate" to constitute an injury in fact.

In response, Plaintiffs state that, as trustee of the plan, Gibbs has standing to sue regardless of whether or not he was specifically injured by Mass Mutual's conduct. *See, Hennessy v. Connecticut Gen. Life Ins. Co.*, 7 E.B.C. Cases 1401 (N.D.Ill. 1985) [available on WESTLAW, 1985 WL 3943] (trustee is a real party in interest and may sue, regardless of whether recovery must be provided to employees or employer).

While the Court now holds that the plan, having accrued an additional year of benefits as a result of Mass Mutual's allegedly dilatory termination, has failed to allege an injury in fact with regard to the plan termination, it has alleged an injury in fact with respect to the profits that Mass Mutual made due to the delayed termination. When Defendant Mass Mutual recommended that the plan purchase individual "cash value" life insurance contracts on behalf of certain plan participants, the purchase of those policies generated considerable commission payments for Defendant, and resulted in significant monetary benefits to Mass Mutual by virtue of premium payments and related actuarial and non-actuarial service fees paid to Defendant. These alleged injuries, separate from plan termination damages, plus the commissions, fees, and expenses of the policy purchases, were paid from funds in the plan.

ERISA § 409, 29 U.S.C. § 1109(a), imposes on fiduciaries the obligation to make good to the plan not only losses to the plan, but "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary. . . ." Plaintiffs assert in their Amended Complaint that the purchase of whole life insurance policies by Mass Mutual harmed Plaintiffs and the plan beneficiaries in that the whole life policies were unnecessarily costly. The first year commissions on the policies were as great as 50% of the premiums, and such "wasted" costs could have been used to fund additional benefits for the beneficiaries.

Although the plan participants may have accrued an additional year of benefits as a result of Defendant's acts and/or omissions, Plaintiffs claim that these benefits were outweighed by the disproportionate amount of commissions and fees which were paid to Defendants. Had the plan been terminated as was requested, the plan

would not have been forced to pay these sums. Therefore, these monies could constitute an actual loss to the plan. Also, Plaintiff Gibbs, as trustee of the plan, has standing to sue on the plan's behalf in order to recover for the plan's injury, despite a lack of injury to Gibbs himself. Mass Mutual's Motion for Judgment on the Pleadings is denied on this ground.

## DISMISSAL OF COUNTS II AND III

Because it is the Court's ruling that Count I of Plaintiffs' Amended Complaint be allowed to stand with respect to Plaintiffs Gibbs and the plan, Defendant's arguments with respect to the dismissal of pendent Counts II and III for lack of federal subject matter jurisdiction are moot. Mass Mutual's Motion is denied as to those counts.

## DEFENDANT LONGANECKER'S MOTION FOR SUMMARY JUDGMENT

Defendant Charles Longanecker, II has filed a Motion for Partial Summary Judgment with respect to both the Coleman Clinic and Gibbs Complaints. Longanecker's Motions for Partial Summary Judgment are identical with respect to both Complaints, as are the responses thereto. Consequently, the Court will address both Motions simultaneously.

The basis of Defendant Longanecker's Motion for Partial Summary Judgment is that he was not an agent or employee of Mass Mutual at any relevant time with respect to Plaintiffs' theory based on termination of the plan. Longanecker's employment with Mass Mutual ended June 1, 1984, two and one-half months prior to Plaintiffs' alleged decision to terminate the plan on August 15, 1984. In fact, Longanecker had even begun employment with a different employer on July 15, 1984, one month prior to Plaintiffs' termination decision. Thus, Longanecker claims that he cannot be liable for any damages related to the subsequent termination of the plan.

Plaintiffs' claim against Longanecker is based upon their belief that, as the general agent of the Mass Mutual Kansas City, Missouri office, Longanecker may well have had a fiduciary duty to properly supervise pension consultant Judith Dudiak, Plaintiffs' primary contact with Mass Mutual, who was asked by Plaintiffs to handle the plan termination. Even if Longanecker did not have such a duty, it is Plaintiffs' position that, at a minimum, he may have had a duty to assure that his successor was aware of matters concerning the plan and its proper handling. Plaintiffs contend that, whether or not Longanecker continued to work for Mass Mutual after August 1984, he may have had personal knowledge of the efforts to terminate the plan, and should not be permitted to walk away from such fiduciary duties by virtue of the fact that he changed jobs. Under these circumstances, particularly since Plaintiffs have not had an opportunity to depose Longanecker, they argue that it is premature to dismiss the plan termination claims against him at this time. They suggest that, upon further discovery, they may be able to determine that Longanecker properly acquitted himself as to the plan termination, at which point stipulation to dismiss from these claims might be appropriate. In the meantime, however, Plaintiffs urge that the plan termination claims against Longanecker be permitted to stand.

█ The Court agrees with Longanecker, and grants his Motions for Partial Summary Judgment. Plaintiffs themselves acknowledge that ERISA, 29 U.S.C. § 1109(b) provides, "no fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became fiduciary or after he ceased to be a fiduciary." Plaintiffs' allegations that Longanecker may have had fiduciary duties which extended beyond his employment at Mass Mutual are contrary to the above provision. The mere fact that Longanecker might have had personal knowledge of efforts to terminate the plan does not mean that he had any fiduciary duties with respect to proper plan termination.

Plaintiffs' claim that Longanecker may have had a fiduciary duty to properly supervise Dudiak is dubious at best. Once

Longanecker was no longer employed by Mass Mutual, he presumably would have no authority to supervise her conduct. As to Plaintiffs' claim that Longanecker might have had a duty to assure that his successor was aware of matters concerning the plan and its proper handling, Plaintiffs would require that Longanecker had the prescience to know that, two and one-half months after he left Mass Mutual, Coleman would seek to have the plan terminated. In other words, even if Longanecker did inform his successor of matters concerning the plan and its proper handling, such instruction would not extend to events, such as Mass Mutual's delay in terminating the plan, that Longanecker could not foresee. ERISA does not require such foresight; neither will this Court. Longanecker's Motions for Partial Summary Judgment are granted.

## THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THIRD PARTY COMPLAINT

Mass Mutual's Third Party Complaint alleges that Third Party Defendants, Edward F. Sutkowski and Sutkowski & Washkuhn Assoc., were employed or retained by Plaintiffs in connection with the termination of the plan. Mass Mutual asserts that it is entitled to indemnification or contribution from Third Party Defendants in the event judgment is entered against Mass Mutual on Plaintiffs' claims.

More specifically, in Mass Mutual's Amended Third Party Complaint, it alleges that Third Party Defendants took action or gave advice with respect to the plan's termination, that they were informed that the plan was allegedly not being terminated in a timely manner, that they knew that an initial notice to terminate the plan would preserve the right to terminate the plan effective the date of the initial notice, that they knew or could determine the date on which the plan would be required to accrue benefits for the 1985 plan year, and that they failed to properly counsel and represent the plan so that the benefits for the 1985 plan year would not accrue. Mass Mutual asserts that all of these actions were taken in breach of Third Party Defendants' common law and contractual duties to Plaintiffs, as well as in violation of their fiduciary obligations to Plaintiffs pursuant to § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).

In their Motion for Summary Judgment on the Third Party Complaint, Third Party Defendants argue that the affidavits of Donna J. Keime, Harlan E. Crouch, and Edward F. Sutkowski, unequivocally establish that Coleman Clinic, Ltd. and the plan did not authorize Sutkowski & Washkuhn Assoc. or any of its attorneys to undertake the plan termination at the relevant points in time. Instead, these matters were entrusted by Plaintiffs solely to Mass Mutual and its agent, Judy Dudiak.

■ This Court has an independent duty to inquire into the basis of its jurisdiction, and, having done so with respect to the Third Party Complaint, concludes that it must *sua sponte* dismiss that pleading. Regardless of what involvement Third Party Defendants had in the plan termination, the Third Party Complaint cannot stand. Any case or controversy which might exist as the result of Third Party Defendants' actions and/or failure to act with respect to the plan termination exists between Plaintiffs and Third Party Defendants—not between Mass Mutual and Third Party Defendants. Thus, this Court has no jurisdiction to even consider the Third Party Complaint.

This result is underscored by Rule 14 of the Federal Rules of Civil Procedure. Under Rule 14, a defendant can only implead a person "who is or may be liable to the *third-party plaintiff* for all or part of the plaintiff's claim against the *third-party plaintiff*." for all or any part of the defendant's claims against *him*. Fed.R.Civ.P. 14(a) (emphasis added). Thus, the Defendant does not have a right to implead persons directly liable to Plaintiff. 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1441 (1971). Mass Mutual has impleaded Third Party Defendants, Edward F. Sutkowski and Sutkowski & Washkuhn Assoc., on the basis of an alleged liability to Plaintiffs. As noted above, Mass Mutual cannot do so. Therefore, regardless of the merits of Third Party Defendants' Motion for Summary Judgment, this Court

must *sua sponte* dismiss the Third Party Complaint.

## CONCLUSION

In summary, the Court GRANTS Defendant Longanecker's Motions for Partial Summary Judgment; GRANTS Defendant Mass Mutual's Motion for Judgment on the Pleadings with respect to Coleman's lack of standing, but DENIES Mass Mutual's Motion insofar as it relates to the standing of Coleman Clinic, Ltd. Employee Pension Plan. Mass Mutual's Motion is DENIED to the extent that Mass Mutual claims that the plan and Plaintiff Gibbs have not alleged an "injury in fact," and is further DENIED as it relates to Counts II and III. The Court DISMISSES, *sua sponte*, the Third Party Complaint for lack of subject matter jurisdiction.

It is so ordered.