**Larry MORRIS, et al., Plaintiffs,**

v.

**Dan LENIHAN, et al., Defendants/Third–Party, Plaintiffs,**

v.

**Fred Niedrist, et al., Third–Party Defendants.**

**No. Civ.A. 96–7590.**

United States District Court, E.D. Pennsylvania.

May 2, 2000.

Lee D. Rockafellow, Morrisville, PA, for plaintiff.

Robert G. Hanna, Jr., Harrisburg, PA, for defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

This action arises out of a tragic fight between plaintiff Larry Morris ("Morris") and four other youths[1] in 1996. Morris alleges in his complaint that he was beaten severely by the four youths and sustained numerous kicks and punches to the head and body. Bristol township police officers arrived on the scene and the assailants fled. The injured Morris was placed in a police car for some time, and then released by the police officers. He returned home and soon thereafter, lapsed into a coma. Plaintiff emerged from the coma, however, he allegedly suffers brain damage, paralysis, and other lasting effects of the beating.

Morris and his parents brought an action against the assailants and their parents in the Court of Common Pleas of Bucks County, Pennsylvania,[2] and brought this action against the police officers, Dan Lenihan, Craig E. Kubanoff, the Bristol Township Police Department, and the Bristol Township Municipal Government (collectively, the "Bristol defendants") pursuant to 42 U.S.C. § 1983, alleging violations of plaintiffs' constitutional rights. The Bristol defendants then brought a third-party complaint against the assailants and their parents. The parents of the assailants, third-party plaintiffs Joan Niedrist (incorrectly identified in the third-party complaint as Barbara Niedrist), June Liszewski (incorrectly named in the complaint as June Anderson), Gregory Becker, and Ginger Becker (collectively, the "parents") have filed motions for summary judgment on the third-party complaint of the Bristol defendants (Documents Nos. 46, 44, and 45, respectively). Thus, it is the third-party complaint that concerns this Court today.

Before addressing the motions on the third-party complaint, it must be determined whether the third-party complaint is properly before this Court.[3] It is widely

---

1. The four other youths are named in the third-party complaint as Brian Hannah, Fred Niedrist, Seven Anderson, and Gregory Becker. It has been reported that the four youths have admitted responsibility for their roles in the beating of Larry Morris and were adjudged delinquent by the Bucks County Juvenile Court. One of these four, Brian Hannah, along with his parents, was dismissed as third-party defendants following a settlement. The remaining three youths will be referred to herein as the "assailants."

2. Despite the fact that the instant action presents issues different from those in the Bucks County case, No. 95-8173, that proceeding was apparently placed in suspense pending the outcome of the instant action.

3. No party has raised this issue directly, though at least one of the third-party defendants denied in their answer that the Court had supplemental jurisdiction over the third-party complaint. *See* Answer of Brian Hanna, a Minor, Brian Hanna

recognized that supplemental jurisdiction exists over a properly brought third-party complaint. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir.1980) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1444, at 321 (2d ed. 1990)) ("The cases on point almost all hold that defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts."); *King Fisher Marine Service, Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1161 (10th Cir.1990) ("A court has ancillary jurisdiction of a defendant's proper Rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction, so long as the court has jurisdiction of the main claim between the original parties.") (citing 6 Wright & Miller, *Federal Practice and Procedure*, § 1444, at 321); *see also FDIC v. Bathgate*, 27 F.3d 850 (3d Cir.1994) (A district court has "ancillary jurisdiction ... over additional third-party defendants to a compulsory counterclaim, or over third party defendants.") (quoting *In re Texas Eastern Transmission Corp. PCB. Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236–37 (3d Cir.1994)).

■ However, if a third-party complaint is not properly brought, the court has no subject matter jurisdiction, and the complaint should be dismissed. *See Salisbury Township Sch. Dist. v. Jared M.*, Civ. A. No. 98–6396, 1999 WL 346237 (E.D.Pa. June 1, 1999) (because none of the third-party defendants could be liable to defendant/third-party plaintiff, entire complaint dismissed *sua sponte*, notwithstanding third-party defendant's acquiescence to suit); *Coleman Clinic, Ltd. v. Massachusetts Mut. Life Ins. Co.*, 698

F.Supp. 740, 747–48 (C.D.Ill.1988) ("This Court has an independent duty to inquire into the basis of its jurisdiction, and, having done so with respect to the Third Party Complaint, concludes that it must *sua sponte* dismiss that pleading.... Any case or controversy which might exist as the result of Third Party Defendants actions ... exists between Plaintiffs and Third Party Defendants—not between [defendant/third-party defendants] and Third Party Defendants. Thus, this Court has no jurisdiction even to consider the Third Party Complaint."); *see also Bathgate*, 27 F.3d at 873 (observing that a district court may not entertain a third-party complaint where there is no basis for liability between the defendant and third-party defendant); *Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 69 F.Supp.2d 678, 690 (M.D.Pa.1999) (a third-party complaint that does not set forth a basis for derivative or secondary liability "is not proper under Rule 14 and thus falls outside of this Court's ancillary jurisdiction") (quoting *Toberman v. Copas*, 800 F.Supp. 1239, 1242 (M.D.Pa.1992)); *U.S. Fire Ins. Co. v. Reading Municipal Airport Auth'ty*, 130 F.R.D. 38, 40 (E.D.Pa.1990) (case dismissed because there was no basis for third-party complaint and no basis for exercising ancillary jurisdiction over third-party defendant).[4]

■ The impleading of parties through a third-party complaint is governed by Rule 14 of the Federal Rules of Civil Procedure, which provides, in pertinent part, "[A] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who

---

and Joanne Hanna to Third Party Complaint with Affirmative Defense, at ¶ 4 (These third-party defendants were dismissed from the case following a settlement.). The Court addresses this question because the Court has a duty to plumb its subject matter jurisdiction in every case at all times, *see EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1048 (3d Cir.), *cert. denied*, 510 U.S. 868, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993) ("subject matter jurisdiction ... may be raised by any party or the court at any time") (citation omitted), and as discussed in the text below, the third-party complaint has jurisdictional implications. Furthermore, "whether a third-party defendant may be impleaded under Rule 14 continues to be a question addressed to the

sound discretion of the Court." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1443, at 298 (2d ed.1990).

4. The Court notes that the third-party complaint was brought pursuant to an order by Magistrate Judge M. Faith Angell (Document No. 14) granting defendants' unopposed motion for leave to file the complaint. However, because the motion was unopposed, Judge Angell made no formal determination as to the basis for the third-party complaint or its propriety. Thus, the Court has never visited the issue it addresses today.

is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Under the rule, "a direct line of liability must be alleged to exist between the third-party plaintiff and third-party defendant independent of that between the first party plaintiff and defendant." *Lopez de Robinson v. United States*, 162 F.R.D. 256, 258 (D.P.R.1995). A defendant/third-party plaintiff may "not ... join a person who is or may be liable solely to the plaintiff." *Hellauer v. NAFCO Holding Co., LLC*, Civ. A. No. 97–4423, 1998 WL 352585 at 8 (E.D.Pa. June 12, 1998) (quoting *Demaio v. Cigna Corp.*, Civ. A. No. 89–0724, 1990 WL 117976 (E.D.Pa. Aug. 9, 1990) (citing *Con-Tech Sales Defined Ben. Trust v. Cockerham*, 715 F.Supp. 701, 704 (E.D.Pa.1989)))[5]. Thus, in determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for the third-party defendant's liability to the defendant/third-party plaintiff.

■ Rule 14, however, does not provide an independent legal basis for third-party cause of action; it merely provides the procedural mechanism for the assertion of such a claim under recognized substantive law. *See McCurdy v. Wedgewood Capital Management Co.*, Civ. A. No. 97–4304, 1999 WL 554590 (E.D.Pa. July 16, 1999). A court must apply the governing substantive law (here, the law of Pennsylvania), to determine whether there is a substantive basis for defendants' third-party complaint. *See Santana Products*, 69 F.Supp.2d at 690; *Pennine Resources, Inc. v. Dorwart Andrew & Co.*, 639 F.Supp. 1071, 1075 n. 5 (E.D.Pa.1986) (citing *Tesch v. United States*, 546 F.Supp. 526, 529 (E.D.Pa.1982)). The third-party complaint in this case asserts that the Bristol defendants are entitled to "contribution and/or indemnification" by the assailants and their parents. Third–Party Complaint, at

¶ 21.[6] Thus, I must look to the law of indemnity and contribution in Pennsylvania.

### Indemnity

■ Turning first to indemnity, it is worth quoting at length from the seminal Pennsylvania case on indemnity, *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951):

> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, *without active fault on his own part*, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence.... It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.... [T]he important point to be noted in all the cases is that *secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties,* or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. *In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there*

5. Prior to an amendment in 1946, Rule 14 also permitted the "impleading of a party who is or may be liable to the plaintiff." Fed.R.Civ.P. 14 advisory committee's note. That language was deleted from the rule for reasons of efficiency and to prevent collusion between plaintiffs and defendants intended to circumvent limitations on plaintiff's ability to join third parties. *See id.* Thus, a defendant may not implead a third party solely because that party may be liable to the plaintiff; rather, defendant must show that the

third party is directly liable to the defendant in order to properly implead the third party.

6. Indemnity is defined as "[a] contractual or equitable right under which the entire loss is shifted from a tortfeasor who is only technically or passively at fault to another who is primarily or actively responsible." *Black's Law Dictionary,* at 769 (6th ed.1990).

*is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a secondary one, even though one may have been very much more negligent than the other.*

366 Pa. at 325–28, 77 A.2d at 370–71, *quoted in Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 250–51, 465 A.2d 1231, 1236 (1983); *Kemper Nat'l P & C Cos. v. Smith,* 419 Pa.Super. 295, 299–300, 615 A.2d 372, 374–75 (1992) (emphasis added). Under *Builders Supply,* then, a defendant is entitled to indemnification when its liability arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party. *See Willet v. Pennsylvania Med. Catastrophe Loss Fund,* 549 Pa. 613, 623, 702 A.2d 850, 854–55 (1997).[7] Examples of such relationships abound: an employer may secure indemnification from a negligent employee; a retailer has a right of indemnity against a negligent wholesaler or manufacturer; a property owner could recover from a contractor who failed to perform specified duties and thereby caused an injury to another; or a municipality with a duty to ensure that property owners maintain sidewalks may be indemnified by a property owner who failed to maintain a sidewalk that caused an injury to a passerby. *See McCabe,* 366 Pa. at 326–27, 77 A.2d at 370–71. *See also Kemper,* 419 Pa.Super. at 301, 615 A.2d at 375.[8]

Nothing in the instant third-party complaint indicates the existence of a relationship between the Bristol defendants and the assailants or their parents that, like the examples above, would legally require the Bristol defendants to pay damages for which the assailants and their parents were primarily liable. The assailants and their parents were not agents or employees of the Bristol defendants, there was no agreement between them that could give rise to secondary liability, and the parents are not alleged to have owed the Bristol defendants any sort of duty. The liability of the Bristol defendants, therefore, is not secondary to that of the assailants or the parents, because there is no legal relationship that could cause the Bristol defendants to be liable for the conduct of the assailants or the parents. The complaint of Morris against the Bristol defendants claims an independent, rather than derivative, basis for the Bristol defendants' liability: that after the beating by the minor assailants, the Bristol defendants, by their own independent acts or omissions, *inter alia* caused further injury to Morris and violated his constitutional rights.

To the extent that the Bristol defendants seek indemnity on the basis that the assailants and their parents bear "primary responsibility" for plaintiff's injuries, they have "misconstrued this basic tenet of indemnity." *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 571, 506 A.2d 868, 871 (1986). The question is not whether the assailants or their parents may be primarily, or ultimately, responsible for causing Morris harm. "Rather a court must look to whether the party seeking indemnity [here, the Bristol defendants] had any part in causing the injury." *Id.* (citing *Helz v. Pittsburgh,* 387 Pa. 169, 127 A.2d 89 (1956)). The Bristol defendants are accused of violating Morris' constitutional rights, and thus the Bristol defendants' liability would not come about by the operation of law or through a legal relationship, but through their own independent acts or omissions. *See id.*[9]

---

7. Pennsylvania's concept of indemnity arising only where there is a relationship giving rise to a legal obligation has been characterized by at least one court as a requirement that privity must exist between the defendant/third-party plaintiff and the third-party defendant. *See Pennine Resources,* 639 F.Supp. at 1073. Clearly, no such privity exists in this case.

8. Indemnity "is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor." *Sirianni v. Nugent Bros., Inc.,*

509 Pa. 564, 570–71, 506 A.2d 868, 871 (1986). Thus, parties cannot use indemnity as a tool to "equitably distribute or apportion responsibility" for an individual's injuries. *Kemper,* 419 Pa.Super. at 303, 615 A.2d at 376.

9. In *Sirianni,* the Supreme Court of Pennsylvania held that the City of Philadelphia was not entitled to indemnification by a contractor for an accident that occurred during the demolition of a building because "the jury could have found the City liable for … negligent selection of contractor, the peculiar risk doctrine, and failure to

For the foregoing reasons, the Bristol defendants have no right of indemnity against the assailants or their parents.

### Contribution

■ As an alternative to indemnity, the Bristol defendants suggest that they have a right of contribution[10] from the parents. Contribution is available only among joint tortfeasors. *See* 42 Pa.C.S.A. § 8321–27; *Walton v. Avco Corp.*, 530 Pa. 568, 581, 610 A.2d 454, 461 (1992); *Childers v. Power Line Equip. Rentals, Inc.*, 452 Pa.Super. 94, 117, 681 A.2d 201, 213 (1996). Thus, it must first be determined whether the Bristol defendants and the assailants and their parents are joint tortfeasors.

Joint tortfeasors are "two or more persons jointly or severally liable in tort for the same injury to persons or property." *See* 42 Pa. C.S.A. § 8322. Pennsylvania courts have fleshed out the concept of joint and several liability by reference to a number of factors enumerated by the venerable Professor Prosser:

> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place, or result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same *injuria* as distinguished from the *damnum.*

*Smith v. Pulcinella*, 440 Pa.Super. 525, 528–29, 656 A.2d 494, 496 (1995); *Voyles v. Corwin*, 295 Pa.Super. 126, 130–31, 441 A.2d 381, 383 (1982) (both quoting W. Prosser, *Law of Torts*, § 46 n. 2 (4th ed.1971)).

Applying these factors to the instant action, I conclude, based upon the uncontested facts of record, that there is no joint and several liability between the Bristol defen-

dants and the assailants and their parents. The causes of actions and alleged duties are not remotely concurrent, similar, or identical; the assailants allegedly committed an assault and battery of Morris, their parents allegedly independently breached their duty to exercise reasonable care in the supervision of their children, and the Bristol defendants are alleged to have breached their constitutional duty to secure or provide medical assistance to the injured Morris and/or not to prevent him from receiving such assistance. The evidence that would prove the conduct of the parents and the assailants in this case is wholly different from the evidence that would be used to establish the liability of the Bristol defendants. The alleged injuries, too, are distinct; the parents and the assailants are alleged to have proximately caused physical harm to Larry Morris, while the Bristol defendants allegedly exacerbated his injuries by failing to ensure, and delaying the provision of, medical care. Furthermore, the alleged malfeasance of the assailants, their parents, and the Bristol defendants took place not simultaneously, but at different times. The factors thus do not support a finding of joint and several liability among the Bristol defendants, the assailants and their parents.

The Bristol defendants stand in a legal position analogous to that of a physician accused of failing to exercise reasonable care in providing medical treatment to an individual originally injured by the wrongful conduct of another. A number of Pennsylvania courts have considered a physician's right of contribution *vis a vis* a tortfeasor whose conduct made necessary the physician's care. In *Harka v. Nabati*, 337 Pa.Super. 617, 622, 487 A.2d 432, 434 (1985), a hospital and physicians who treated a woman injured by roll of chain link fencing that fell from a truck sought contribution from the allegedly negligent truck driver. The court observed, "Case law specifically holds that a tortfeasor

supervise the demolition." *Sirianni*, 509 Pa. at 571, 506 A.2d at 871. The court concluded that because the city had participated in the events that led up to the accident, the city was "not merely liable by operation of law," and therefore was not entitled to indemnification. *See id.*

10. Contribution is the "right of one who has discharged a common liability to recover of another also liable ... a tortfeasor against whom a judgment is rendered is entitled to recover proportional shares from other joint tortfeasors whose negligence contributed to the injury and who were also liable to the plaintiff." *Black's Law Dictionary*, at 328 (6th ed.1990)

originally causing an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors ... The acts of the original wrongdoer and the negligent physician are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff. While they are two active tortfeasors, they are not actually acting 'jointly' when using that term in the strict sense." *Harka*, 337 Pa.Super. at 622, 487 A.2d at 434 (quoting *Lasprogata v. Qualls*, 263 Pa.Super. 174, 178 n. 2, 397 A.2d 803, 805 n. 2 (1979)). The court affirmed the lower court's denial of a right of contribution to the doctors and the hospitals.

■ The Pennsylvania Superior Court reached similar conclusions in *Lasprogata v. Qualls* and *Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381 (1982). In both cases, plaintiffs were injured in automobile accidents, and physicians accused of negligence sought contribution against third persons whose negligence caused the automobile accidents. The courts applied the above factors and concluded that the individuals whose conduct allegedly caused the initial injury were not joint tortfeasors with the physicians, and therefore the physicians were not entitled to contribution. *See Voyles*, 295 Pa.Super. at 131, 441 A.2d at 383; *Lasprogata*, 263 Pa.Super. at 179, 397 A.2d at 805.[11]

The similarities between the physicians and hospitals in *Harka*, *Voyles* and *Lasprogata* and the Bristol police and township are significant. Both law enforcement officers and health care providers are often required, by the very nature of their professions, to assist people who have been injured by the negligent or intentional conduct of a third party. As in *Harka*, the conduct of police officers in this case and the original wrongdoers are "severable as to time ... and each breached a different duty owed to the injured plaintiff." Any injury to Morris inflicted by the Bristol defendants, be it aggravation of an injury or causation of an independent injury, was legally distinct in type and cause from the injury inflicted by the assailants or their parents. Just as physicians are not joint tortfeasors with original wrongdoers, Bristol defendants are not joint tortfeasors with the assailants and their parents, and therefore the Bristol defendants are not entitled to contribution from the assailants and their parents.

*Conclusion*

■ This Court is "bound to assess its subject matter jurisdiction at all times and ... review *sua sponte* whether its subject matter jurisdiction has been properly invoked," *Mangano v. Halina*, No. 97–1678, 1997 WL 697952 at *4 (E.D.Pa., Nov. 3, 1997) (citing *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 960 (3d Cir.1980)). Where such jurisdiction is lacking, this Court must dismiss the complaint. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir.1995) (remarking on "the general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*") (citing *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988)).[12]

---

**11.** Without indemnity or contribution, the only arguable basis for the Bristol defendants to recover from the assailants and their parents would be apportionment. Pennsylvania's Comparative Negligence Statute, 42 Pa.C.S.A. § 7102(b) codified the practice of apportioning liability among defendants against whom plaintiff has recovered. However, apportionment may only take place among parties that are properly in the case. *See Kemper Nat'l P & C. Companies v. Smith*, 419 Pa.Super. 295, 306–06, 615 A.2d 372, 378 (1992). Because I have concluded that the bases for the Bristol defendants' third-party complaint, indemnity and contribution, are unsupported by the factual allegations of the complaint and are therefore insufficient foundations for liability as a matter of law, the assailants and their parents are not in the case and liability could not be apportioned to them.

**12.** A court acquires subject matter jurisdiction over a third-party complaint via the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides, "[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claim in the action within such original jurisdiction that they form part of the same case or controversy...." This generally has been interpreted to require the existence of a common nucleus of operative facts between the

I have concluded that the third-party complaint is bereft of a basis for indemnity or contribution, and that it constitutes an improper attempt by the Bristol defendants to implead parties who are liable not to them, but only to the plaintiffs. *See Hellauer v. NAFCO Holding Co., LLC*, No. 97–4423, 1998 WL 352585 at *8 (E.D.Pa. June 12, 1998). Because there is no direct line of liability between the Bristol defendants and the assailants and their parents, the third-party complaint was improperly brought, and this Court lacks jurisdiction over the matter. *See Santana Products*, 69 F.Supp.2d at 690; *Jared M.*, 1999 WL 346237 *4–5; *Coleman Clinic*, 698 F.Supp. at 747–748.[13] Therefore, the Court has no choice but to dismiss the third-party complaint.

Without drawing any conclusions as to the merits of the case, I observe in closing that the third-party complaint is based on the troubling premise that law enforcement officers are somehow shielded from liability for their violation of a citizen's constitutional rights when the wrongful conduct of another causes that citizen to come under police protection and care. Such a premise is antithetical to the role of law enforcement officers in our society. We have entrusted to the men and women in blue, under some circumstances, the honorable and demanding task of providing aid to individuals when they are in obvious and dire need, and often that need is brought about by the misdeeds of others. Even in cases involving such misdeeds, law enforcement officers have an independent duty to conduct themselves in a manner consistent with the constitutional

rights of the victim. If they are found to have breached that duty, they may not seek to shift that responsibility to others.

---

underlying and additional claims. *See MCI Telecommunications Corp. v. Teleconcepts*, 71 F.3d 1086 (3d Cir.1995), *cert. denied*, 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996). I am not convinced that these requirements could be met in this case; the cases against the Bristol township and the assailants and their parents are factually distinct, involve no real overlap, and are not necessarily part of the same case or controversy. Plaintiffs apparently believe that supplemental jurisdiction does not exist over the claims against the assailants and their parents, because plaintiffs have asserted none of their state claims against the assailants or their parents in this Court.

**13.** None of the parties has raised this issue in any filing with the Court. Thus, in addressing

this issue *sua sponte*, the Court realizes that the parties have not been heard. Ordinarily, the Court would seek the perspectives of the parties via briefs and/or an oral hearing. However, the Court has an independent duty to determine whether subject matter jurisdiction was properly invoked. The pleadings and the record provide all the information necessary to make this decision, and it seems clear that there is no valid basis for liability between the Bristol defendants and the assailants and their parents. I can presently conceive of no result other than the conclusion reached today, and I doubt that I could be convinced otherwise, regardless of the skill of counsels' advocacy or the extensiveness of the due process provided.