**TRANSDERMAL PRODUCTS, INC.**

v.

**PERFORMANCE CONTRACT PACKAGING, INC., et al.**

Civil Action No. 96–3504.

United States District Court,
E.D. Pennsylvania.

Nov. 6, 1996.

**552**

Mark C. Clemm, Cutler, Clemm & Morris, P.C., Plymouth Meeting, PA, for Plaintiff.

Kevin Canavan, Swartz, Campbell & Detweiler, Philadelphia, PA, for Defendants.

### *MEMORANDUM*

BARTLE, District Judge.

This action involves alleged trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Pennsylvania Trademark Act, 54 Pa.Cons.Stat.Ann. § 1101 *et seq.* The plaintiff, Transdermal Products, Inc. ("Transdermal"), also claims tortious interference with contracts. Defendants, Performance Contract Packaging, Inc. ("PCP"), and two of PCP's employees, Edward Parker and Kevin Parker, presently seek leave from this court to join Laboratorio Maver, S.A. ("Maver") as a third-party defendant under Rule 14 of the Federal Rules of Civil Procedure. The court previously denied the motion of defendants to join Maver under Rule 19 of the Federal Rules of Civil Procedure as a party needed for just adjudication.

According to the complaint, plaintiff Transdermal has been manufacturing and marketing transdermal patches [1] with the mark "LePatch" since 1988, a mark Transdermal registered in 1995. In 1993, Transdermal contracted with defendant PCP to package and ship "LePatch" to Transdermal customers, including Maver, a Chilean enterprise. In 1995, PCP allegedly began manufacturing and selling its own version of "LePatch" to Maver. Transdermal sued PCP, but not Maver, in this court seeking injunctive and monetary relief.

Rule 14 states in relevant part:

(a) At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Defendants assert that Maver may be liable to them for any judgment obtained by plaintiff because "MAVER selected the [Transdermal] mark in question, and MAVER represented that it owned and had the authority to use the mark." Although they fail to cite a single case or discernable legal principle to explain their theory of liability, the defendants have touched on the principle of "contributory infringement."

▮ Section 43(a) of the Lanham Act, which the plaintiff invokes as a basis for relief, provides in pertinent part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device ... which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). This provision proscribes trademark infringement and more general types of unfair competition. *AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995). Section 43(a) does not limit liability to the direct infringer, that is, the person who actually mislabels the goods or product with the mark belonging to another. The Supreme Court has determined that the Lanham Act also allows for secondary liability:

---

**1.** The transdermal patch is an increasingly popular method of drug delivery. A patch, containing a drug, is placed onto the skin. The drug penetrates the skin and enters the body. *See Trans-dermal Patches Go Electric,* Genesis Report–RX, August 1, 1996, *available in* WESTLAW, 1996 WL 10364835.

[L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another.... Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.

*Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853–54, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). Although *Ives* dealt with Section 32 of the Lanham Act, its formulation of contributory infringement has been extended to cases arising under Section 43(a). *See, e.g., Winback and Conserve*, 42 F.3d at 1421. While it is not as clear that the doctrine of contributory infringement applies to the Pennsylvania Trademark Act, and we can find no controlling Pennsylvania Supreme Court precedent, a decision in this District suggests that the doctrine should apply. In *Smithkline Beckman Corp. v. Pennex Prod. Co.*, 103 F.R.D. 539 (E.D.Pa.1984), the defendant allegedly engaged in federal and state unfair competition by manufacturing an aspirin tablet which closely resembled a tablet manufactured by the plaintiffs. The court allowed the defendant to serve a third-party complaint on customers who allegedly "expressly approved the name and packaging of the aspirin," concluding that these customers could be joint tort-feasors. *Id.* at 540. Although the court did not label it as such, the apparent basis of the customers' liability was contributory infringement. Importantly, the court drew no distinction between the federal and state trademark/unfair competition laws, thereby implying that contributory infringement could be a viable ground for liability under both statutes.

The analysis in *Smithkline* comports with the common law underpinnings of trademark law. It has been noted that "the Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts." *Winback and Conserve*, 42 F.3d at 1433. The theory of contributory infringement grew out of this common law.

Indeed, the Supreme Court first addressed the theory over 70 years ago. *See William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924). *Ives* merely confirmed the continued vitality of contributory infringement under federal statutory law. *Winback and Conserve*, 42 F.3d at 1432. Similarly, Pennsylvania's Trademark Act incorporates the common law of trademarks and unfair competition. It provides: "[n]othing in this chapter shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." 54 Pa.Cons.Stat. Ann. § 1126. Given the common origins of the Lanham Act and the Trademark Act, we perceive of no reason why a longstanding common law theory of liability such as contributory infringement should apply to one statute but not the other.

Admittedly, the vast majority of contributory infringement cases have concerned manufacturers who sold generic products to retailers and either encouraged these retailers to infringe a trademark or, knowing that these retailers were infringing a trademark, continued to supply the products. *See Ives*, 456 U.S. at 852–57, 102 S.Ct. at 2187–90; *see also, e.g., Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650 (2d Cir.1989); *David Berg & Co. v. Gatto Int'l Trading Co.*, 884 F.2d 306 (7th Cir.1989). These cases are different from the present action, as the defendants here allege that Maver, the retailer/distributor, encouraged PCP, the manufacturer, to violate Transdermal's trademark.

Yet the pertinent language of *Ives*, when broken into its component parts, would seem to authorize liability against Maver. *Ives* subjects "manufacturers or distributors" to liability. *Ives*, 456 U.S. at 854, 102 S.Ct. at 2188. Maver distributes the allegedly fraudulent transdermal patches in Central and South America. This distributor must "intentionally induce[ ] another to infringe a trademark." *Id.* The defendants claim that Maver, a longtime Transdermal customer, "selected the mark in question and represented ... that it owned and had the authority to use the mark." If Maver selected the "LePatch" mark and encouraged PCP to copy the mark, knowing, as a Transdermal

customer, that it was Transdermal's mark, a fair reading of *Ives* would seem to impose liability on Maver.

The Eleventh Circuit has held a distributor liable in a factually similar case. In *Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165 (11th Cir.1991), defendant Shaffer and Levi, Inc. ("Shaffer"), a furnishing company, had a falling out with its lamp supplier, Bauer Lamp, Inc. Shaffer then retained Richards Manufacturing, Inc. and Visual Effects, Inc., to manufacture lamps that were identical to Bauer's neo-classic line of lamps. Bauer sued all involved parties for trademark infringement.

Shaffer argued that it could not be held liable to Bauer under the Lanham Act since it did not manufacture the infringing lamps. The Eleventh Circuit disagreed, stating:

> It is undisputed that [Shaffer] contacted two manufacturers ... and asked them to produce lamps substantially similar to those produced by Bauer.... It was not necessary that Shaffer [ ] actually manufacture the infringing lamps to make [it] liable for trade dress infringement. A person who knowingly participates in furthering the trade dress infringement is liable as a contributing party.... Furthermore, since trade dress infringement is a tort, they may be held responsible as joint tort-feasors.

*Bauer Lamp*, 941 F.2d at 1171.

The case law suggests, then, that Maver could be liable to the plaintiff on a theory of contributory infringement. That does not implicate Rule 14, however, unless Maver's contributory infringement renders it potentially liable to the *defendants* "for all or part of the plaintiff's claim against [the defendants]."

■ Contributory and direct infringers are joint tort-feasors. *Bauer Lamp*, 941 F.2d at 1171; *Smithkline Beckman Corp. v. Pennex Prod. Co.*, 103 F.R.D. 539, 540 (E.D.Pa.1984). Generally, one joint tort-feasor is entitled to contribution from other joint tort-feasors. *See* Restatement (Second) of Torts § 886A (1979). Even though the Lanham Act has its roots in the common law, the cases are not in agreement on whether the Lanham Act allows for such contribution. *Compare, e.g., Allen Organ Co. v. Galanti Organ Builders Inc.*, 798 F.Supp. 1162, 1171 (E.D.Pa.1992), *aff'd,* 995 F.2d 215 (3d Cir. 1993), *with Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). In any event, plaintiff has also pleaded a claim under the Pennsylvania Trademark Act. The law of the Commonwealth unquestionably authorizes a joint tort-feasor defendant to seek contribution from fellow joint tort-feasors. 42 Pa. Cons.Stat.Ann. § 8324. This is true "irrespective of the theory by which tort liability is imposed" on the defendant. *Svetz for Svetz v. Land Tool Co.*, 355 Pa.Super. 230, 513 A.2d 403, 409 (1986), *app. denied,* 515 Pa. 581, 527 A.2d 542 (1987); *see also Commonwealth Dept. of Transp. v. Popovich*, 117 Pa.Cmwlth. 14, 542 A.2d 1056, 1057–58 (1988), *aff'd,* 522 Pa. 508, 564 A.2d 159 (1989).

Maver falls squarely within Rule 14's notion of a third-party defendant as it *may* be a contributory infringer in this action and therefore, at least under Pennsylvania law, *may* be liable to the defendants for contribution. *Accord Smithkline*, 103 F.R.D. at 540–41. Defendants' motion for leave to join Maver as a third-party defendant will be granted.