**SANTANA PRODUCTS, INC., Plaintiff,**

v.

**BOBRICK WASHROOM EQUIPMENT, INC., Bobrick Washroom Corp., The Hornyak Group, Inc., and Vogel Sales Co., Defendants and Third–Party Plaintiffs,**

v.

**Formica Corp., Third–Party Defendant.**

**No. 3:CV–96–1794.**

United States District Court,
M.D. Pennsylvania.

Aug. 30, 1999.

Carl W. Hittinger, Philadelphia, PA, for third-party plaintiff.

Matthew H. Adler, Philadelphia, PA, for third-party defendant.

## MEMORANDUM

VANASKIE, District Judge.

### I. BACKGROUND

On October 1, 1996, plaintiff Santana Products, Inc. (Santana) instituted this action against defendants Bobrick Washroom Equipment, Bobrick Corporation, The Hornyak Group, Inc., Vogel Sales Company, Sylvester & Associates, Ltd., and Fred Sylvester.[1] Santana alleges that Bobrick and other toilet compartment manufacturers conspired to enforce a product standard that had the effect of excluding Santana's high density polyethylene ("HDPE") compartments from the relevant market. Specifically, Santana contends that Bobrick and others falsely represented that toilet compartments were subject to flame and smoke standards applicable to a "wall finish," rather than the standard for furniture and fixtures. According to Santana, Bobrick (and its alleged co-conspirators) then informed prospective purchasers that Santana's HDPE product did not meet the wall finish standard to dissuade the prospective purchasers from selecting Santana's product. Santana seeks to recover under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of tortious interference with prospective contractual relationships.

Santana's lawsuit against Bobrick was preceded by a lawsuit filed in this Court by Santana against eleven other toilet compartment manufacturers and the For-

mica Corporation, referred to collectively by Santana as the Toilet Partition Manufacturer's Council ("TPMC").[2] As in this case, Santana's claims in the TPMC action included alleged violations of §§ 1 and 2 of the Sherman Act, and § 43(a) of the Lanham Act, as well as tortious interference with prospective contractual relations. As does this case, the TPMC action focused on an alleged conspiracy "to use scare tactics to discourage specification and acceptance of Santana's HDPE partitions in lieu of or as a replacement material for conventional [toilet partition] materials by falsely alleging that Santana's partitions posed a dangerous fire hazard." (TPMC Complaint, ¶ 21 Attached as Ex. "F" to Bobrick's Third–Party Complaint (Dkt. Entry 174).) Santana alleges in both actions that Formica, a manufacturer of phenolic sheets used by toilet partition manufacturers other than Santana, induced its customers to use a Formica videotape that falsely depicted the flammability of Santana's HDPE partitions.

In early 1995, Formica and other TPMC members sued in the TPMC action settled with Santana and that lawsuit was dismissed. The "Release and Covenant Not to Sue" executed in connection with the settlement specified that it was governed by New York law.

On June 1, 1998, Bobrick filed a Third–Party Complaint against Formica, asserting counts for (1) contribution, (2) indemnification, (3) fraud, and (4) negligent misrepresentation. (Dkt. Entry 174.) Bobrick's Third–Party Complaint focuses on the Formica videotape purporting to depict the flammability of Santana's product. The Formica videotape showed one of Santana's HDPE toilet partitions actually being set on fire with a lighter. Bobrick alleges that Formica encouraged Bobrick to use the videotape in its marketing efforts. (Third–Party Complaint

---

1. By Memorandum and Order dated July 24, 1998, Sylvester & Associates, Ltd., and Fred Sylvester were dismissed for lack of personal jurisdiction. *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 14 F.Supp.2d 710 (M.D.Pa. 1998).

2. This action, which was brought in 1994, will be referred to herein as the "TPMC action."

(Dkt. Entry 174) ¶ 19.) Bobrick alleges that Formica failed to inform it that the videotape contained false representations and information. (*Id.* ¶ 20.) Bobrick contends that it reasonably relied upon the Formica videotape and that, as a result of that reliance, Bobrick has been sued by Santana.

Formica has moved to dismiss the Third–Party Complaint. (Dkt. Entry 191.) Formica asserts that Bobrick may not maintain an action for contribution for alleged violations of the Sherman Act and the Lanham Act. Formica also contends that *any* claim for contribution is barred by the release it executed to settle its liability in the TPMC action. Formica further argues that Bobrick has failed to allege a proper claim for indemnification in that (1) Bobrick was not a passive tortfeasor, and (2) any indemnification claim is premature. Finally, Formica contends that the state law claims of fraud and negligent misrepresentation are not proper third-party claims.

## II. DISCUSSION

### A. Contribution

#### 1. Anti–Trust Claim

Bobrick concedes that the Sherman Act does not permit a third-party claim for contribution. (Bobrick's Opp.Br. (Dkt. Entry 213) at 5.)

#### 2. Lanham Act Claim

█ There is a dearth of case law concerning whether a claim for contribution is permitted under the Lanham Act. In *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989), upon which Formica relies, the Second Circuit determined that no express or implied right to contribution existed under the Lanham Act. *Id.* at 16 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (refusing to imply a right to contribution under antitrust laws); *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 93–94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (refusing to imply a right to contribution under the Equal Pay Act and Title VII)).[3] On the other hand, in *Allen Organ Co. v. Galanti Organ Builders, Inc.*, 798 F.Supp. 1162, 1171 (E.D.Pa.1992), *aff'd mem.,* 995 F.2d 215 (3d Cir.1993), a case upon which Bobrick places sole reliance, Judge Bartle of the Eastern District of Pennsylvania recognized joint tortfeasor principles under the Lanham Act.[4] Subsequent to *Allen Or-*

---

3. Formica has also cited *AT & T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 n. 16 (3d Cir.1994), *cert. denied,* 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995). In that case, the Third Circuit noted that courts interpreting the Lanham Act had looked to both state common law as well as general federal common law for guidance. *Id.* at 1434 n. 16. The Third Circuit cited the *Getty* decision as a case in which federal common law, as opposed to state common law, was considered for guidance. *Id.* The court noted, however, that other courts had looked to state common law in connection with the Lanham Act. Because the agency principles implicated in *Winback* were identical under federal common law and New Jersey common law, the Third Circuit did not definitely decide whether it would follow state common law or federal common law when interpreting the Lanham Act. Although not deciding the issue, the Third Circuit stated that it was "inclined to favor application of general principles of federal common law" to

resolve Lanham Act claims. *Id.* This dictum suggests that the Third Circuit would follow *Getty* in its holding that the Lanham Act does not allow a claim for contribution as there is no federal common law right to contribution. *Getty,* 862 F.2d at 16.

4. In *Allen Organ,* the court considered whether a *plaintiff* may maintain an action against an alleged joint tortfeasor under the Lanham Act, not whether the Lanham Act permits a defendant to maintain a third-party action for contribution. In making its determination, *Allen Organ* did not cite *Getty, Texas Industries* or *Northwest Airlines.* Rather, the court relied solely upon *Max Daetwyler Corp. v. Input Graphics, Inc.*, 541 F.Supp. 115 (E.D.Pa. 1982), a case decided prior to *Getty, Texas Industries* and *Northwest Airlines. Max Daetwyler* held that a *plaintiff* may include joint tortfeasors as multiple defendants under the Lanham Act under a contributory infringer theory, but did not address whether a defendant may maintain a third-party action for

*gan*, Judge Bartle noted that the cases were "not in agreement on whether the Lanham Act allows for such contribution." *Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*, 943 F.Supp. 551, 554 (E.D.Pa.1996). Because the plaintiff in *Transdermal Products* had also asserted a claim under the Pennsylvania Trademark Act, Judge Bartle determined that the defendant could assert a third-party claim for contribution under state law against a contributory infringer. *Id.* at 554. Judge Bartle thus pretermitted the question of whether there was a right to contribution under Lanham Act.[5]

It appears that the only case to squarely address the availability of a contribution claim under the Lanham Act is *Getty*. David Hricik, "Remedies of the Infringer: The Use by the Infringer of Implied and Common Law Federal Rights, State Law Claims, and Contract to Shift Liability for Infringement of Patents Copyrights and Trademarks," 28 *Tex.Tech.L.Rev.* 1027, 1058–59 (1997). *Getty* is consistent with *Texas Industries* and *Northwest Airlines* in rejecting a claim for contribution under the Lanham Act.

Some commentators have argued that there should be a right to contribution in the context of "contributory infringement." *Id.*[6] This argument is based on the Supreme Court's holding that there is a right to contribution with respect to actions under Rule 10b–5 of the Securities and Exchange Commission. *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). As Hricik explains:

After *Getty Petroleum* was decided . . . the Supreme Court recognized a distinction in the statutory schemes at issue in *Texas Industries* and *Northwest Airlines* cases, indicating that *Getty Oil* was incorrectly decided. In *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, the Court held that there was an implied right to contribution in an action under Rule 10b–5 of the Securities and Exchange Commission. In distinguishing *Texas Industries* and *Northwest Airlines*, the *Musick, Peeler & Garrett* Court emphasized that liability under the statutory scheme at issue in those cases was expressly created by Congress, whereas liability for violating Rule 10b–5 had been implied by the courts. Because Rule 10b–5 liability was implied by the courts, the Court reasoned that "[h]aving implied the underlying liability in the first place, to now disavow any authority to allocate it on the theory that Congress had not addressed the issue would be most unfair to those against whom damages are assessed."

*Thus, the argument exists that because liability for inducing or contributing to trademark infringement is entirely of judicial creation, an implied right of contribution should be permitted under the Lanham Act. The judiciary implied a private right of action for secondary trademark infringement, and*

contribution against an alleged joint tortfeasor under the Lanham Act.

More particularly on point is *Smithkline Beckman Corp. v. Pennex Products, Co.*, 103 F.R.D. 539 (E.D.Pa.1984). In that case, the defendant, a manufacturer of generic drugs, sought to implead six proposed third-party defendants, all of whom were retailers that purchased the alleged infringing drug from the defendant. The court, without reference to *Texas Industries*, *Northwest Airlines*, or even the Lanham Act itself, found that the six third-party defendants were potentially liable under the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.Cons.Stat. Ann. §§ 8321 *et seq*. *Id.* at 540. In that case,

however, the plaintiff had alleged both federal and state unfair competition claims. There is no dispute that as to the state claims a right to contribution would exist. *Smithkline* is therefore distinguishable.

5. *Transdermal Products* and *Smithkline* are analogous in that third-party claims for contribution were permitted where there were both Lanham Act and state law unfair competition claims.

6. Courts have implied a cause of action for contributory infringement, which encompasses the actions of those who induce another to violate the Lanham Act. *See Transdermal Prods.*, 943 F.Supp. at 553.

*as a result courts have a responsibility to elaborate upon that right. Just as with Rule 10b–5, the right of action against a party who has not itself committed trademark infringement is wholly judicial in origin. Having found a power to create secondary liability, courts should likewise have the power to allocate that liability fairly.*

David Hricik, "Remedies of the Infringer: The Use by the Infringer of Implied and Common Law Federal Rights, State Law Claims, and Contract to Shift Liability for Infringement of Patents Copyrights and Trademarks," 28 *Tex.Tech.L.Rev.* 1027, 1058–59 (1997) (emphasis added). Moreover, another commentator has noted:

On a broader level, *Musick, Peeler* sets forth a new framework that allows federal courts to treat implied causes of action analytically different from express causes of action. Prior to *Musick, Peeler,* the Court rejected distinctions between express and implied causes of action. Under *Musick, Peeler,* when presented with a request to create an implied cause of action, federal courts must continue to apply the strict analytical framework set forth in *Texas Industries* and *Northwest Airlines.* Conversely, when contribution for an implied cause of action is sought, *Musick, Peeler* allows federal courts to treat the question as ancillary to the underlying implied cause of action, thereby giving courts broad discretion in determining whether to create a right to contribution.

Note, "Musick, Peeler & Garrett v. Employers Insurance: Will the Judicial Oak Seed a Judicial Forest," 43 *Cath.U.L.Rev.* 987, 1019–20 (1994).

In *Musick, Peeler & Garrett,* the Court found it significant that Congress had provided for contribution in certain instances under the Securities and Exchange Act. 508 U.S. at 297, 113 S.Ct. 2085 ("We think that these explicit provisions [15 U.S.C. §§ 781(e) and 78r(b) ] for contribution are an important, not an inconsequential, feature of the federal securities laws and that consistency requires us to adopt a like

contribution rule for the right of action existing under Rule 10b–5.").

The Lanham Act, by way of contrast, has no provisions governing contribution among wrongdoers. Thus, the analysis in *Musick, Peeler* does not compel a conclusion that a right of contribution should be recognized with respect to Lanham Act claims. On the contrary, *Musick, Peeler* reaffirmed application of the analysis employed in *Texas Industries* and *Northwest Airlines* where the federal interest at stake had been "defined by statutory provisions that were express in creating the substantive damages liability for which contribution was sought." *Musick, Peeler,* 508 U.S. at 290–91, 113 S.Ct. 2085.

In this case, "the duty to be created [is] one governing conduct subject to liability under an express remedial provision fashioned by Congress...." *Id.* at 292, 113 S.Ct. 2085. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), generally proscribes misrepresentations about the characteristics of another's products. It is therefore appropriate to employ the *Texas Industries* and *Northwest Airlines* analysis to Bobrick's claim for contribution.

In determining whether such an implied cause of action for contribution exists, *Texas Industries* and *Northwest Airlines* instruct the court to decipher the intent of Congress when it enacted the Lanham Act. "Congressional intent may be discerned by looking to the legislative history and other factors: e.g., the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, [and] the traditional role of the State in providing relief." *Texas Indus.,* 451 U.S. at 639, 101 S.Ct. 2061; *Northwest Airlines,* 451 U.S. at 91, 101 S.Ct. 1571 ("Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplant existing state remedies.").

In this case, it is clear that Bobrick is not a member of the class intended to be

protected under the Lanham Act; instead, Bobrick is a party intended to be punished under the Lanham Act. The Lanham Act also provides a comprehensive legislative scheme along with an explicit private cause of action under § 1125(a).[7] Unlike the Sherman Act, however, the Lanham Act was not intended to supplant or supersede state law. *See* David Hricik, "Remedies of the Infringer: The Use by the Infringer of Implied and Common Law Federal Rights, State Law Claims, and Contract to Shift Liability for Infringement of Patents Copyrights and Trademarks," 28 *Tex.Tech. L.Rev.* 1027, 1058–59 (1997). Finally, "[t]here is no indication in the legislative history that Congress intended to include a right of contribution in the Lanham Act." *Id.* at 1061 & n. 210 (noting that the 1943 hearings before the House Committee on Patents made no mention of a right to contribution under the Lanham Act).[8]

In short, consideration of the factors enumerated in *Texas Industries* and *Northwest Airlines* compels the conclusion that there is no right to contribution for violations of the Lanham Act. What the Court said in *Texas Industries* is fully applicable here:

> Proponents of the right to contribution advance concepts of fairness and equity in urging that the often massive judgments in antitrust actions be shared by the wrongdoers. In the abstract, this position has a certain appeal: collective fault, collective responsibility. But the efforts of petitioner and supporting amici to invoke the principles of equity presuppose a legislative intent to allow parties violating the law to draw upon

equitable principles to mitigate the consequences of their wrongdoing. Moreover, the traditional equitable standards have something to say about the septic state of the hands of such a suitor in the courts, and, in the context of one wrongdoer suing a co-conspirator, these standards similarly suggest that parties generally *in pari delicto* should be left where they are found.

*Texas Indus.,* 451 U.S. at 635, 101 S.Ct. 2061. As recognized in *Getty,* this reasoning militates against recognition of a right to contribution with respect to Santana's Lanham Act claim against Bobrick. Therefore, Formica's motion to dismiss the contribution claim based upon violations of the Lanham Act will be granted.

### 3. Release

▪ Even if the Lanham Act allowed an infringer to assert a contribution claim, the release executed between Santana and Formica would bar *any* contribution claim, whether asserted under federal or state law. Under the terms of the parties agreement, Santana released Formica

> from any and all claims, demands, actions, causes of action and suits, in law or in equity, whether now known or unknown, which [Santana] ever had, now has, or hereafter can, shall or may have from the beginning of the world to the day of the date of this Release for, upon or by reason of any matter, cause or thing whatsoever, including, without limitation, any matter, cause or thing arising out of or based upon any allegation contained in the Complaint in an action

---

7. The Lanham Act has also provided specific instructions regarding the calculation of damages resulting from a violation of § 1125(a). Under 15 U.S.C. § 1117(a), a plaintiff may seek as damages: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action. Section 1117(a) also provides that a court may award attorney fees to the prevailing party in an exceptional case. No mention is made of a right to contribution.

8. Moreover, the Lanham Act has been amended numerous times since 1946. Importantly, § 1125 was amended in 1996 to provide a remedy for dilution of famous marks. 15 U.S.C. § 1125(c). This amendment came well after the *Getty* decision. Congress has not made any attempt to undermine the validity of *Getty*. Congressional inaction in light of *Getty* coupled with the actual amendment of § 1125 to provide an additional private claim compels a finding that Congress has not intended to allow a defendant to assert a claim for contribution under the Lanham Act.

entitled *Santana Products, Inc. v. Toilet Partition Manufacturers Council, et al.,* No. 3:CV–94–1962, pending in the United States District Court for the Middle District of Pennsylvania (the "Settled Claims"), except a claim to enforce the terms of the Settlement Agreement or the Release and Covenant Not to Sue of even date.

(Formica's Exs. (Dkt. Entry 204) Ex. B.) The release also provides that New York law will apply regardless of conflict of law principles. New York law provides:

(a) Effect of Release of or Covenant not to Sue Tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one or two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, *but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages* under article fourteen of the civil practice law and rules, *whichever is greatest.*

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) *relieves him from liability to any other person for contribution* as provided in article fourteen of the civil practice law and rules.

(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

N.Y.Gen.Obl.Law § 15–108(b) (McKinney 1978) (emphasis added). New York law plainly provides that any judgment obtained by Santana against Bobrick will be reduced by the *greater* of either the

amount actually received from the settling defendants or by the amount of their equitable fault. *Id.*

As explained in the "Practice Commentaries" accompanying § 15–108, New York law on the effect of a release of one of several joint tortfeasors was intended to promote settlement by assuring the settling tortfeasor that "he has bought peace" by relieving him from liability for contribution. The non-settling tortfeasor is protected because he is entitled to have the jury apportion liability between himself and the settling tortfeasor, with the non-settling party's liability being no greater than the share assigned it by the factfinder. *See Mead v. Bloom,* 94 A.D.2d 423, 425–26, 464 N.Y.S.2d 904 (App.Div. 1983), *aff'd,* 62 N.Y.2d 788, 477 N.Y.S.2d 326, 465 N.E.2d 1262 (1984).[9] The non-settling party is also relieved of any liability for contribution to the settling party.

Section 15–108(b) has been given effect by dismissing claims for contribution against a settling party. *See, e.g., Brown v. Singh,* 222 A.D.2d 392, 634 N.Y.S.2d 520 (App.Div.1995); *Grovenger v. Laboratory Procedures, Inc.,* 132 A.D.2d 289, 292, 522 N.Y.S.2d 356 (App.Div.1987). New York law has also been applied to bar contribution claims under federal law. *See, e.g., Soto v. United States Lines, Inc.,* 608 F.Supp. 904 (S.D.N.Y.1985) (dismissing third-party complaint against settling tortfeasor in action under the Jones Act, 46 U.S.C. § 688).

Bobrick asserts that Formica and it are joint tortfeasors. (Bobrick Opp.Br. (Dkt. Entry 213) at 7–10.) Accordingly, § 15–108(b) requires dismissal of Bobrick's claim for contribution from Formica.

■ Bobrick does not dispute the fact that under New York law the release executed by Formica bars Bobrick's contribution claim. Instead, Bobrick attempts to avoid this result by contending that the release should be construed under Pennsylvania law.

---

**9.** If the settling party pays more than its apportioned share of liability, the non-settling party obtains the benefit of that overpayment, with its liability being limited to the difference between the judgment and the amount paid by the settling party.

■ Pennsylvania law provides that a "release by a plaintiff does not relieve the settling tortfeasor from making contribution to another tortfeasor unless the release is given before the right of the other tortfeasor to secure monetary contribution has accrued *and it provides for a reduction to the extent of the settling tortfeasor's pro rata share of damages recoverable against all other tortfeasors.*" *Baker v. AC & S, Inc.,* 729 A.2d 1140, 1147 (Pa.Super.1999) (citing 42 Pa.Cons.Stat.Ann. § 8327) (emphasis added). Bobrick contends that Santana's release of Formica fails to comply with Pennsylvania law in that it does not explicitly provide for a *pro rata* reduction of damages recoverable against the other tortfeasors. (Bobrick Opp.Br. (Dkt. Entry 213) at 12.)

Bobrick argues that Pennsylvania law must be applied because Bobrick was not a party to the release. Of course, the non-settling party is rarely a signatory to a release given by the settling party. The fact that Bobrick did not sign the Formica release does not necessarily preclude application of New York law to determine the effect of the release.

10. I agree with Formica's position that Bobrick suffers no prejudice from the application of New York law and that Bobrick has "fail[ed] to consider the realities of this litigation." (Formica Reply Br. (Dkt. Entry 216) at 6.) Application of New York law simply does not prejudice Bobrick as it will be entitled to either a *pro tanto* reduction or a *pro rata* reduction, depending upon which is greater. Indeed, New York law is more favorable to Bobrick than Pennsylvania law, which would limit Bobrick to a reduction in liability in the amount paid by Formica.

11. Even if I were to apply a conflicts analysis, I find that New York has a stronger interest in this litigation. First, although Santana is a Pennsylvania corporation, it agreed that New York law should apply without regard to conflict of law principles. Moreover, Bobrick is *not* a Pennsylvania corporation, but a California corporation. Therefore, its interest in the application of Pennsylvania law is weak. Moreover, there are no strong public policy arguments that would warrant abandonment of the parties' intent in executing the release. As noted by Formica:

■ "In Pennsylvania, it is well-settled that the effect of the release is to be determined by the ordinary meaning of its language." *Baker,* 729 A.2d at 1147 (citing *Wolbach v. Fay,* 488 Pa. 239, 412 A.2d 487 (1980); *Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764 (1961)). In this case, the release plainly states that New York law will govern without consideration of conflict of laws principles. As noted above, New York law provides that a release of one tortfeasor eliminates the non-settling tortfeasors' right to contribution. New York law also protects the non-settling tortfeasors by requiring that any judgment obtained against the non-settling tortfeasors be reduced by the greater of the consideration paid by the settling tortfeasor for the release (a *pro tanto* reduction) or the settling tortfeasor's equitable fault (a *pro rata* reduction).[10]

Thus, Pennsylvania law itself mandates application of N.Y.Gen.Obl.Law § 15–108(b). To hold otherwise would ignore the plain and unambiguous terms of the Formica release in contravention of Pennsylvania law.[11] Accordingly, Bobrick's claim for contribution will be dismissed.[12]

To adopt Bobrick's argument, which states, in effect, that the Court must apply the law of some other state where a future action is brought, *i.e.,* where a defendant is subject to personal jurisdiction, generally speaking, would impose an enormous burden on counsel for the parties to canvas the law of the 50 states and include the necessary (and perhaps inconsistent) language from the statute in every state where a settling defendant might be sued for contribution in order to foreclose a claim like the one Bobrick seeks to bring here.

12. Although the Formica Release and Covenant Not to Sue is not attached to Bobrick's Third–Party complaint, but was presented as an exhibit to Formica's motion to dismiss, consideration of this document does not necessarily require that Formica's motion be treated as one for summary judgment. Our Court of Appeals has held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. de-*

## B. Indemnification

 While § 15–108 bars a claim for contribution, it does not foreclose a claim for indemnification. *See Grovenger*, 132 A.D.2d at 291, 522 N.Y.S.2d 356. As with the contribution claim, however, there is no federal common law right to indemnification and Congress has not explicitly or implicitly provided such a right to indemnification under the Sherman Act or the Lanham Act. Thus, indemnification with respect to violations of federal law is foreclosed. *Cf. Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130 (9th Cir.1998) (finding no right to indemnification or contribution under Cable Communications Policy Act and Communications Act), *petition for cert. filed*, No. 98–1833, 67 U.S.L.W. 3717 (U.S. May 13, 1999); *Mortgages, Inc. v. United States District Court for the District of Nev.*, 934 F.2d 209, 212 (9th Cir.1991) (finding no right to indemnification or contribution under False Claims Act); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1191 (7th Cir.1989) (finding that federal courts will not create a private right of indemnification or contribution without support in either the statutory text or the legislative history); *Green v. United States Dep't of Labor*, 775 F.2d 964, 971 (8th

Cir.1985) (finding no right to indemnification or contribution provided under Federal Employees' Compensation Act); *Crescent Wharf & Warehouse Co. v. Barracuda Tanker Corp.*, 696 F.2d 703, 705 (9th Cir. 1983) (finding no right to indemnification or contribution under Longshoremen's and Harbor Workers' Compensation Act). Bobrick, however, also seeks indemnification as to Santana's common law claims. Therefore, the viability of Bobrick's indemnification claim will be considered.

 In a third-party action for indemnity, the third-party plaintiff must demonstrate that its liability is secondary or passive. *See Resolution Trust Corp. v. KPMG Peat Marwick*, No. 92–1373, 1993 WL 211555, at *2 (E.D.Pa. June 8, 1993); *Twin City Fire Ins. Co. v. Pierce Leahy Co.*, No. 92–6370, 1993 WL 131333, at *2 (E.D.Pa. Apr. 23, 1993) ("If the party seeking indemnity had 'any part in causing the injury,' indemnity is not available."); *Schiele v. Simpson Safety Equip., Inc.*, No. 91–1872, 1992 WL 73588, at *2 (E.D.Pa. Apr.7, 1992) ("Under Pennsylvania law, indemnity is limited to those situations in which the defendant's liability is secondary or passive."); *Jet Plastica Indus., Inc. v. Goodson Polymers, Inc.*, No.

---

nied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

Other courts have considered a release attached to a defendant's motion to dismiss without converting the motion to one for summary judgment. For instance, in *Kaufman & Broad–South Bay v. Unisys Corp.*, 822 F.Supp. 1468 (N.D.Cal.1993), the plaintiff referenced the subject release in the complaint, but failed to attach a copy of the release to the complaint. In response to the defendant's submission of the release in support of its motion to dismiss, the court determined that reference to the release in the complaint made the document part of the complaint itself. As such, the court determined that it could "consider the release without converting the motion to dismiss into one for summary judgment." *Id.* at 1472; *see also Ficke v. Johns*, No. 95–939, 1996 WL 99424, at *3 (N.D.Ill. Mar. 4, 1996) ("Plaintiff referred to the Release in several places in the complaint.... Thus, the court will consider the Release as part of the plaintiff's complaint and will not

convert this motion into a motion for summary judgment."); *cf. Schroeder v. Lufthansa German Airlines*, No. 83–1928, 1987 WL 18568, at *3 (N.D.Ill. Oct. 15, 1987) (finding that question of effect of release was a question of law and that motion to dismiss would be converted to a motion for summary judgment without seeking additional materials from the parties).

In this case, Bobrick affirmatively pled release as an affirmative defense, thereby invoking the protection of N.Y.Gen.Obl.Law § 15–108. Bobrick's Third–Party complaint alleges that the TPMC action was settled on January 27, 1995. Bobrick does not contest the authenticity of the Release and Covenant Not to Sue. Under these circumstances, consideration of that document in this procedural context should not be foreclosed. Nonetheless, if Bobrick contests the validity of the release or contends that it was not given in good faith, it may seek reconsideration of this decision by filing an appropriate motion within ten (10) days.

91–3470, 1992 WL 17207, at *3 (E.D.Pa. Jan. 27, 1992) (same). As noted by the Pennsylvania Supreme Court, indemnification arises "only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 570, 506 A.2d 868, 871 (1986).[13]

■ Santana's complaint against Bobrick contains no allegations of negligence. Instead, the complaint alleges repeatedly that Bobrick knowingly and intentionally attempted to exclude Santana from the toilet partition market, knowingly made false and disparaging statements about Santana's products, and intentionally and maliciously interfered with Santana's prospective business relations. (Bobrick's Third–Party Complaint (Dkt. Entry 174) Ex. A, Original Complaint, ¶¶ 70(a)–(d), 75(a)–(b), 81, 84.)[14] The allegations in Santana's complaint clearly encompass intentional acts by Bobrick, not passive actions that would entitle Bobrick to indemnification.

■ The claims asserted by Santana require proof that Bobrick acted intentionally. To succeed on its claim under § 1 of the Sherman Antitrust Act, Santana must show: (1) concerted action by Bobrick; (2) that was designed to achieve an unlawful objective; (3) that produced anti-competitive effects within the relevant product and geographic markets; and (4) that the concerted action injured Santana. *See Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1229 (3d Cir.), *cert. denied*, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). Critical to any § 1 determination is the necessity of collusive conduct that was competitively unreasonable, *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 690, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), and that produced an "antitrust injury." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The cornerstone of a § 1 claim is an allegation that two or more distinct entities entered into an understanding or agreement to take joint action against a plaintiff to achieve an unlawful objective. *See Weiss v. York Hosp.*, 745 F.2d 786, 813 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). In terms of the § 1 claim, Santana will be required to prove that Bobrick knowingly entered into an agreement with Formica and/or others to take joint action against Santana to achieve an unlawful objective.

13. Formica argued that Bobrick's indemnification claim is premature as Bobrick has not yet been held liable for any damages to Santana. Federal Rule of Civil Procedure 14(a), however, clearly permits a third-party indemnification claim prior to a final judgment being entered against a third-party plaintiff. Fed.R.Civ.P. 14(a) ("At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is *or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.*" (emphasis added)).

14. Bobrick argues that only the allegations contained in its third-party complaint may be considered in determining whether Bobrick has stated a viable third-party claim. It is axiomatic that Bobrick's allegations in the third-party complaint must be accepted as true. Whether a court may also consider the allegations contained within the original complaint in assessing the validity of a third-party complaint is less clear. This procedural problem is academic, however, as Bobrick has included a copy of Santana's complaint as an exhibit to its third-party complaint. *See Copelco Credit Corp. v. Fahey*, No. 96–1688, 1997 WL 793570, at *1 (E.D.Pa. Dec.8, 1997) (finding that where third-party complaint included as one of its exhibits a copy of the original complaint, the original complaint could be considered in ruling on third-party defendant's motion to dismiss the third-party complaint); *Railey v. Southern Railway Co.*, 31 F.R.D. 519, 522 (E.D.S.C.1963). As Formica argues, "[t]o adopt the rule advanced by Bobrick makes no sense, particularly here where Santana's complaint makes clear it only seeks to recover from Bobrick for Bobrick's intentional conduct...." (Formica Reply Br. (Dkt. Entry 216) at 7.)

Thus, the viability of Santana's § 1 claim rests upon Bobrick's active conduct in knowingly joining an antitrust conspiracy.

█ Section 2 of the Sherman Act provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire to monopolize, any part of the trade or commerce among the several states ... shall be deemed guilty of a felony." 15 U.S.C. § 2. In order to support its § 2 claim, Santana must demonstrate: " '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.' " *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.,* 159 F.3d 129, 141 (3d Cir.1998). Thus, in order to succeed under its § 2 claim, Santana must prove that Bobrick acted with the specific intent to monopolize trade. Thus, any judgment against Bobrick in relation to the § 2 claim must be based upon a finding that Bobrick did not act passively.

With respect to the Lanham Act claim, Santana alleges that Bobrick knowingly made false misrepresentations regarding Santana's HDPE partitions. In addition to Bobrick's use of the Formica videotape, Santana has also alleged that Bobrick created its own videotape which compared the differences between HDPE partitions and other available partitions. (Bobrick's Third–Party Complaint (Dkt. Entry 174) Ex. A, Original Complaint, ¶ 61.) Santana contends that Bobrick knowingly made numerous false statements in its videotape concerning HDPE partitions. (*Id.* ¶¶ 62–64.) Moreover, Santana alleges that Bobrick used its false videotape to persuade potential customers to reject Santana's HDPE toilet partitions. (*Id.* ¶ 65.) Santana's complaint also contains allegations that Bobrick created a bulletin that contained false allegations concerning Santana's HDPE product. (*Id.* ¶ 47.) Santana contends that Bobrick circulated a memorandum to its architectural representatives in which it again falsely represented Santana's HDPE partitions. (*Id.* ¶ 48.) In

another instance, Santana alleges that Bobrick created and circulated a bulletin that falsely stated that HDPE partitions posed a fire and smoke hazard. (*Id.* ¶ 51.) Thus, the allegations in Santana's complaint make clear that Bobrick's action was not limited to passively distributing Formica's videotape without regard to its accuracy. Instead, the complaint contains numerous allegations of Bobrick actively creating and knowingly distributing false advertising material. It is thus clear that even if there was a right to indemnification under the Lanham Act, the allegations of the pleadings preclude an indemnification claim here.

█ Finally, in terms of Santana's claim that Bobrick interfered with Santana's prospective business advantage, such a claim requires Santana to prove: (1) a prospective contractual relation; (2) Bobrick's intent to harm Santana by preventing the relation from occurring; (3) the absence of privilege or justification on the part of Bobrick; and (4) damage arising from Bobrick's conduct. *See Kelly–Springfield Tire Co. v. D'Ambro,* 408 Pa.Super. 301, 308, 596 A.2d 867, 871 (1991). Therefore, Santana must prove that Bobrick purposefully interfered with its business relations—clearly active, not passive, conduct.

In short, a review of the Bobrick's third-party complaint and Santana's original complaint warrants a finding that Bobrick may not assert a claim for indemnification on these facts. Any liability that Bobrick suffers will result from Santana's proof of its claims that Bobrick acted knowingly and intentionally in falsely representing Santana's products to potential customers. As noted by Formica: "Thus, Bobrick will be found liable to Santana only if it engaged in knowing and intentional misconduct, which would bar Bobrick's claim for indemnity against Formica. If, on the other hand, Bobrick proves that it did not engage in knowing or intentional misconduct, Santana's claims will fail, and thus, Bobrick will not require indemnity from

Formica." (Formica's Reply Br. (Dkt. Entry 216) at 8–9.) The pleadings make clear that Santana seeks to hold Bobrick liable as an active, not passive, party. Therefore, Formica's motion to dismiss Bobrick's third-party indemnification claim will be granted.

### C. Fraud and Negligent Misrepresentation Claims

██ Bobrick's claims for fraud and negligent misrepresentation do not present a theory of secondary or derivative liability as required under Federal Rule of Civil Procedure 14(a). As noted by this Court:

> [A third-party complaint] must set forth a claim of secondary liability such that, if the third-party plaintiff is found liable, the third-party defendant will be liable to him/her under a theory of indemnification, contribution or some other theory of derivative liability recognized by the relevant substantive law. Any third-party complaint which does not facially meet this test is not proper under Rule 14 and thus falls outside of this Court's ancillary jurisdiction.

*Toberman v. Copas*, 800 F.Supp. 1239, 1242 (M.D.Pa.1992) (citations omitted); *see also FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir.1994) ("A third party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant."); *Ronson v. Talesnick*, 33 F.Supp.2d 347, 356 (D.N.J.1999) ("A third-party complaint that does not make a facial showing of secondary liability will not be entertained by the court."); *Damar, Inc. v. Advanced Global Design, Inc.*, No. 98–3435, 1998 WL 967549, at *1 (E.D.Pa. Nov.19, 1998) (finding that third-party complaint that alleged torts committed by third-party defendant, but no allegations of secondary liability, could not be maintained under Rule 14); *Lawyer's Title Ins. Co. v. Suburban Abstract Assoc., L.P.*, No. 94–6127, 1995 WL 321885, at *1 (E.D.Pa. May 25, 1995) ("First and foremost, a third-party complaint must seek relief under a theory of secondary or derivative liability.").

██ While Bobrick properly alleged claims for contribution and indemnification in its third-party complaint, those claims have been dismissed. Bobrick's independent claims for fraud and negligent misrepresentation against Formica cannot form the basis of a third-party complaint as they do not assert derivative or secondary liability. In its third-party complaint, Bobrick alleges it

> has been damaged by the alleged [fraudulent misrepresentation and/or negligent misrepresentations] of Formica by *being subject to a lawsuit and having to expend substantial sums in defending itself* against allegations based directly upon Bobrick or its independent architectural representatives showing the Videotape to specifiers, building code officials, architects and builders.

(Third–Party Complaint (Dkt. Entry 174) ¶¶ 43, 49.) Clearly, the fraud and negligent misrepresentation claims relate to damages that Bobrick suffered defending against Santana's claims relating to the Formica videotape. The fraud and negligent misrepresentation claims are not dependent upon the outcome of the underlying action. Rather, these claims exist without regard to the ultimate success or failure of Santana's action. Nor do the fraud and negligent misrepresentation claims shift responsibility for Santana's damages; rather, Bobrick seeks to recover its own damages independent of the success of Santana's action. Therefore, because the fraud and negligent misrepresentation claims do not present secondary liability claims and cannot be maintained under Rule 14, Formica's motion to dismiss the fraud and negligent misrepresentation claims will be granted.

### III. CONCLUSION

There is no right to contribution or indemnification under the Sherman Act or the Lanham Act. Moreover, the release between Formica and Santana bars Bo-

brick's contribution claim against Formica. Because Santana's underlying action depends upon Bobrick's knowing and intentional acts, a third-party claim for indemnification is unavailable. Finally, the claims for fraud and negligent misrepresentation are not derivative claims for secondary liability, but rather independent tort claims which may not be maintained independently through a third-party complaint under Rule 14(a). For all of these reasons, Formica's motion to dismiss the third-party complaint will be granted.